IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 DEC 16  AM 8: 36

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W.D. OF TN, MEMPHIS

| | | |
|---|---|---|
| LAISI R. KADRI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-2562 Ml/V |
| | ) | |
| HANFORD T. JOHNSON, acting | ) | |
| Secretary of the Navy, | ) | |
| | ) | |
| Defendant. | ) | |

---

## ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

---

Before the Court is Plaintiff Laisi R. Kadri's ("Plaintiff")
Motion for Award of Attorney's Fees and Costs, filed May 23,
2005.  Defendant Hansford T. Johnson, Acting Secretary of the
Navy ("Defendant"), responded in opposition on June 22, 2005.
Defendant filed a Supplemental Response to Plaintiff's Petition
for Fees on August 11, 2005.  On September 28, 2005, Plaintiff
filed a Supplemental Motion and Reply to Defendant's Response and
Supplemental Response to Plaintiff's Motion for Award of
Attorney's Fees and Costs.  For the following reasons,
Plaintiff's motion for attorney's fees and costs is GRANTED, with
adjustments as discussed below.

### I.  Background

On July 30, 2003, Plaintiff filed the instant action against
his employer, the United States Navy, alleging violations of
Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on  12-16-05

78

Specifically, Plaintiff alleged that he was denied a promotion as the result of discrimination based on his race, color, and ethnicity and that he was subjected to a hostile work environment.  On October 25, 2004, the Court granted summary judgment in Defendant's favor as to Plaintiff's claim of discrimination based on the failure to promote and denied Defendant's motion for summary judgment as to Plaintiff's hostile work environment claim.  A jury trial on Plaintiff's hostile work environment claim commenced on May 2, 2005.  On May 9, 2005, the jury rendered a verdict in Plaintiff's favor.  The jury awarded Plaintiff $8,000.00 for medical expenses, but did not award damages for pain and suffering.  The Court's final judgment on the jury's verdict was entered on May 10, 2005.  Plaintiff subsequently filed the instant motion for award of attorney's fees and costs on May 23, 2005.

## II.  Legal Standard

A court may award a reasonable attorney's fee to the prevailing party in a Title VII action.[1]  42 U.S.C. § 2000e-5(k).  A "prevailing party" is a party that succeeds on any significant issue in litigation and attains some of the benefit sought in

---

[1] In Adcock-Ladd v. Secretary of Treasury, 227 F.3d 343 (6th Cir. 2000), the Sixth Circuit stated that "[i]dentical standards govern under 42 U.S.C. § 1988, 42 U.S.C. §§ 2000e-5(k) & 2000e-16(d), and/or any other federal enactment which empowers a court to bestow recovery of attorney fees upon a 'prevailing party.'" 227 F.3d at 349 n.7 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 n.7 (1983)).

bringing suit.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).
The amount of attorney's fees compensable under § 2000e-5(k) is
determined by the "lodestar" method, in which fees are
"calculated by multiplying the number of hours reasonably
expended on the litigation times a reasonable hourly rate."
Blanchard v. Bergeron, 489 U.S. 87, 94 (1989)(quoting Blum v.
Stenson, 465 U.S. 886, 888 (1984)).  The court may then adjust
this lodestar calculation in light of other factors.  Blanchard,
489 U.S. at 94.

The party seeking attorney's fees has the burden of proof on
the numbers of hours expended and the hourly rates claimed.
Hensley, 461 U.S. at 433.  The district court has discretion in
determining the amount of the fee award.  Id. at 437.  One
important factor the court must consider in determining whether a
fee award is reasonable, or whether the award should be adjusted
upward or downward, is the result obtained in the litigation.
Id. at 434.  Other factors courts have considered are set forth
in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th
Cir. 1974).  These factors include: (1) the time and labor
required; (2) the novelty and difficulty of the questions; (3)
the skill requisite to perform the legal service properly; (4)
the preclusion of employment by the attorney due to acceptance of
the case; (5) the customary fee; (6) whether the fee is fixed or
contingent; (7) time limitations imposed by the client or the

circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Hensley, 461 U.S. at 430 n.3 (citing Johnson, 488 F.2d at 717-19).

## III.  Analysis

Plaintiff's original petition requests fees in the amount of $115,807.50 and expenses in the amount of $8,736.06. Plaintiff's September 28, 2005, supplemental motion requests an additional $2,784.00 in fees and $3,249.18 in expenses, for a total of $118,591.50 in fees and $11,985.24 in expenses. These figures are based upon the number of hours Plaintiff's attorneys expended on the case from June 17, 2003, through the present.

Defendant does not contest the reasonableness of the hourly rates of Plaintiff's individual attorneys. Rather, Defendant objects to the reasonableness of the number of combined hours claimed by Plaintiff's counsel, as well as to Plaintiff's recovery of certain fees and expenses. In the alternative, Defendant argues that Plaintiff's petition for attorney's fees should be denied in its entirety or reduced as a sanction for Plaintiff's "willful misconduct" during trial, namely, Plaintiff's dishonest testimony about his credentials. The Court will address Defendant's request for sanctions first.

-4-

## A.   Sanctions

Defendant first contends that Plaintiff's request for attorney's fees and costs should be denied outright, as a sanction for Plaintiff's "serious misconduct" in perpetrating "a fraud on the Court" during the trial of this case.  Specifically, Defendant requests that the Court exercise its inherent authority to deny Plaintiff any fee award as a sanction for his false testimony that he held a Ph.D. degree in computer engineering. Plaintiff later recanted this testimony and admitted that he had not earned a Ph.D., but only after defense counsel had made arrangements to bring in two witnesses to Memphis to provide evidence that Plaintiff had neither obtained a Ph.D. nor been admitted to a Ph.D. program.  Defendant complains that Plaintiff did not notify Defendant's counsel of his intention to recant his prior testimony in time to avoid Defendant's considerable expense and "extreme inconvenience to the two witnesses and their respective institutions."

In support of this request for sanctions, Defendant cites Chambers v. PASCO, Inc., 501 U.S. 32 (1991).  The Supreme Court, in Chambers, held that federal courts may rely on their inherent power to impose attorney's fees as a sanction "when a party has acted in bad-faith, vexatiously, wantonly, or for oppressive reasons."  501 U.S. at 46, 50 ("[I]f a court finds that fraud has been practiced upon it, or that the very temple of justice has

-5-

been defiled, it may assess attorney's fees against the responsible party, as it may when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.")(citations and internal quotations omitted). The Supreme Court advised that a court must "exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees . . . ." <u>Id.</u>

In this case, the conduct about which Defendant complains is not sufficiently egregious to warrant a sanction in the form of an outright denial or a reduction of attorney's fees.  Perjured testimony alone does not constitute a "fraud upon the court." <u>Quality Tech. Co. v. Stone & Webster Eng'g Co.</u>, 7 F.3d 234, 1993 WL 375803, at *3 (6th Cir. Sept. 23, 1993).  Only the "most egregious misconduct, such as bribing a judge or members of the jury or fabricating evidence with the collusion of an attorney, will constitute a fraud on the court." <u>Coleman v. Shoney's, Inc.</u>, No. 99-3134, 2002 WL 1784289, at * 2 (W.D. Tenn. July 9, 2002)(citing <u>Fierro v. Johnson</u>, 197 F.3d 147, 154 (5th Cir. 1999)); <u>see also</u> <u>Cleveland Demolition Co. v. Azcon Scrap Corp.</u>, 827 F.2d 984, 986 (4th Cir. 1987)(holding that fraud on the court may exist where witness and attorney conspire to present perjured testimony).  Fraud on the court has been narrowly defined to embrace "only that species of fraud which does or attempts to,

-6-

defile the court itself, or is a fraud perpetrated by officers of
the court so the judicial machinery can not perform in the usual
manner its impartial task of adjudging cases." True v. Comm'r,
999 F.2d 540, 1993 WL 272478, at *2 (6th Cir. July 20,
1993)(quoting 7 James Wm. Moore et al., Moore's Federal Practice,
¶ 60.33, at 515 (2d ed. 1974)).  It "generally involves a
deliberately planned and carefully executed scheme designed to
subvert the integrity of the judicial process." Id. (citing
Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238, 245
(1944)); see also First Nat'l Bank of Louisville v. Lustig, 96
F.3d 1554, 1573 (5th Cir. 1996)("To establish fraud on the court,
it is necessary to show an unconscionable plan or scheme which is
designed to improperly influence the court in its
decision.")(citations omitted).

    In this case, Plaintiff's untruthful testimony that he held
a doctoral degree from the University of Texas does not
constitute fraud upon the court.  Plaintiff's statements, which
he subsequently recanted, do not evince an "unconscionable plan
or scheme" designed to improperly influence the court.  His
testimony did not pertain to a material issue of fact in the
case, and the jury did not rely on his falsehood to reach a
verdict, since Plaintiff admitted, on the stand, that he did not
hold a Ph.D.  Moreover, Defendant has not presented any evidence
to support a finding that Plaintiff colluded with his attorneys

to present false testimony.  In sum, Defendant has not "demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." Coleman, 2002 WL 1784289, at *2 (denying request that court use inherent powers to impose sanctions on plaintiffs for intentional false statements during depositions)(quoting Aoude v. Mobile Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989)). Accordingly, the Court does not find that sanctions in the form of a reduction or outright denial of attorney's fees are appropriate in this case.

**B.   Attorney's Fees**

**1.   Hourly Rate**

In determining a reasonable hourly rate, "courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." Geier v. Sundquist, 372 F.3d 784, 791 (6th Cir. 2004).  Defendant does not disagree that Plaintiff's attorneys' hourly rates[2] are commensurate with the prevailing market rate in the Memphis

---

[2] Plaintiff's attorneys' requested hourly rates are as follows: $250 for Kathleen L. Caldwell; $200 for Robin H. Rasmussen; $140 for Emily B. Bjorkman; $85 for paralegals; and $80 for law clerks.

-8-

community for attorneys of comparable skill and experience who handle employment discrimination cases. The Court therefore finds that Plaintiff's attorneys' hourly rates are reasonable for purposes of calculating the lodestar figure.

### 2.   Reasonable Number of Hours Expended

The second aspect of the lodestar calculation involves the reasonable number of hours expended by an attorney. Courts may eliminate any hours that are "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434. Defendant makes numerous objections to the hours expended by Plaintiff's counsel in this case. Specifically, Defendant objects to Plaintiff's recovery of: (1) fees and expenses associated with issues on which Plaintiff did not prevail; (2) certain non-attorney fees; and (3) fees associated with duplication of tasks. The Court will address each of these objections in turn.

### a.   Unsuccessful Claims

Defendant first objects to Plaintiff's recovery of fees and expenses related to claims that were ultimately dismissed, either voluntarily or by the Court. According to Defendant, Plaintiff should not recover fees and expenses associated with: (1) Plaintiff's disparate treatment claim, which this Court dismissed upon Defendant's motion for summary judgment; (2) the time spent drafting and serving Plaintiff's original complaint with respect to defendant Phillip Evans—Plaintiff's supervisor—that was

subsequently dismissed pursuant to a consent order; (3) Plaintiff's motion to amend the complaint to add a § 1981 claim, which was later withdrawn; and (4) Plaintiff's retaliation claim, which was included in Plaintiff's complaint, but never tried before the jury. Defendant requests that the Court reduce the amount of Plaintiff's recovery with respect to these issues.

In response, Plaintiff argues that the fees and expenses associated with these claims are not inappropriate or unreasonable simply because Plaintiff did not ultimately prevail on them. Plaintiff contends that these claims were "related to" his successful hostile work environment claim and that the time spent in good faith on these legal theories should not be deducted from the total fee award calculation.

As a threshold matter, the Court finds that Plaintiff is a "prevailing party" entitled to attorney's fees under Title VII, 42 U.S.C. § 2000e-5(k). As set forth above, a "prevailing party" is a party that succeeds on any significant issue in litigation and attains some of the benefit sought in bringing suit. <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983). "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute[, which] may be accomplished by obtaining some relief on the merits through a favorable judgment . . . ." <u>Crabtree v. Collins</u>, 900 F.2d 79, 82 (6th Cir.

1990)(citations and internal quotations omitted); see also Farrar v. Hobby, 506 U.S. 103, 111 (1992) ("[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim.").

In this case, Plaintiff is a "prevailing party" for purposes of Title VII's attorney's fee provision because he succeeded on his hostile work environment claim.  After a trial on the merits of Plaintiff's hostile work environment claim, the jury rendered a verdict in Plaintiff's favor and awarded damages.  Plaintiff's status as a prevailing party is not altered simply because he did not obtain relief on all of his original claims or as against each original defendant. See Reed v. Cracker Barrel Old Country Store, Inc., 171 F. Supp. 2d 751, 754 (M.D. Tenn. 2001)(holding that plaintiff was "prevailing party" entitled to recover attorney's fees and costs even though plaintiff did not succeed on all claims at trial and the court dismissed some claims on a motion for summary judgment).

When awarding attorneys fees to a prevailing party who did not succeed on every claim, however, "a district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." Hensley, 461 U.S. at 434, cited in Wooldridge v. Marlene Indus. Corp., 898 F.2d 1169, 1175 (6th Cir. 1990).  The task of separating time spent litigating unsuccessful claims "is

-11-

a complicated one in civil rights cases, where many of the cases involve overlapping factual issues and related legal theories." Reed, 171 F. Supp. 2d at 764.  As the Sixth Circuit has opined:

> a court should not reduce attorney fees based on a simple ratio of successful claims to claims raised.  When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced.

Thurman v. Yellow Freight Sys., Inc., 90 F.3d 1160, 1169 (6th Cir. 1996)(internal citation omitted).

Here, the claims of disparate treatment and retaliation alleged in Plaintiff's original complaint involve "related legal theories" and a "common core of facts."  Although Plaintiff did not ultimately prevail under these theories, the Court finds that the hours spent on them were not unreasonable due to their interrelated nature.

On the other hand, the Court concludes that the time incurred to remove Plaintiff's supervisor as a defendant and to prepare and later withdraw a motion to amend the complaint to add a § 1981 cause of action was not reasonable.  These claims are not legally intertwined with Plaintiff's Title VII claims.  It is well settled that supervisors, sued in their individual capacities, cannot be held personally liable for discrimination under Title VII.  See, e.g., Akers v. Alvey, 338 F.3d 491, 496

-12-

(6th Cir. 2003); <u>Hiler v. Brown</u>, 177 F.3d 542, 546 (6th Cir. 1999); <u>Wathen v. General Elec. Co.</u>, 115 F.3d 400,406 (6th Cir. 1997). It is equally well settled that Title VII provides the "exclusive judicial remedy for claims of discrimination in federal employment." <u>Brown v. Gen. Servs. Admin.</u>, 425 U.S. 820, 835 (1976). "[A] federal employee claiming job discrimination may proceed only under Title VII, and may not secure additional remedies by proceeding also under § 1981." <u>Day v. Wayne County Bd. of Auditors</u>, 749 F.2d 1199, 1204 (6th Cir. 1984).

As the time spent on these claims is easily separable from the time spent on Plaintiff's other claims, the Court will deduct these hours from the overall lodestar calculation. Accordingly, the Court deducts $1,932.50 for the fees incurred in connection with these claims.[3]

### b.   Law Clerk and Paralegal Fees

Defendant next contends that the Court should not award attorney's fees for research conducted by a law clerk on the admissibility of a letter that the Court later ruled was inadmissible at trial. According to Defendant, "a clear reading

---

[3] The Court deducts fees incurred on February 10, 2004, ($187.50), and March 4, 2004, ($50.00), for work on the consent order dismissing Phillip Evans. Fees incurred on the following dates for work performed to amend the complaint to add a cause of action pursuant to § 1981 will also be deducted: October 24, 2004, ($200.00); October 25, 2004, (two entries totaling $1,200.00); November 10, 2004, ($245.00); and November 17, 2004 ($50.00).

of the letter" would have revealed that it was not an internal
determination of discrimination, and therefore, not admissible as
proof of a hostile work environment.  Defendant also objects to
the reasonableness of a law clerk's attendance at the pretrial
conference and the fees incurred for the preparation of summons
and photocopying by a paralegal.

In response, Plaintiff claims that the research on the
letter's admissibility was neither frivolous nor in bad faith.
Plaintiff also contends that the law clerk's attendance at the
pre-trial conference was reasonable because the clerk had
prepared many of the pre-trial motions. Finally, Plaintiff notes
that the time spent by the paralegal to prepare summons and make
photocopies was not unreasonable and that reasonable out-of-
pocket expenses, such as photocopying and paralegal work, are
recoverable.

The Sixth Circuit has explained that all time reasonably
spent on a matter is generally recoverable, and the "the fact
that some of that time was spent in pursuing issues on research
which was ultimately unproductive, rejected by the court, or
mooted by intervening events is wholly irrelevant." Northcross,
611 F.2d at 636.  The Court finds Plaintiff's explanation for the
law clerk's attendance at the pre-trial conference to be
reasonable and declines to deduct from Plaintiff's fee award on
this basis.  With regard to the fees for paralegal photocopying

-14-

and preparation of notice and summons, the Supreme Court has noted that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989).  The Court will therefore deduct from Plaintiff's recovery the cost of photocopying billed on May 6, 2004, ($21.25)[4] and the paralegal work performed in connection with the notice, summons, and return of service billed on July 29, August 7, 27, and September 2 and 16 of 2003 ($170.00).[5]

## c.   Duplication of Effort

Defendant also objects to Plaintiff's recovery for time spent by multiple attorneys on the same tasks. According to Defendant, this was a "garden variety . . . case of discrimination" that Kathleen Caldwell, one of Plaintiff's attorneys, routinely handles on her own, without the assistance of other counsel.  Therefore, Defendant argues, there was an

---

[4] The Court deducts the photocopying fee in its entirety because the billing records do not indicate the number of copies made on this date, thereby preventing the Court from calculating the expense using the $0.25/copy rate provided for other copy expenditures.

[5] Defendant also objects to 4.75 hours billed at the paralegal rate of $85.00 per hour on February 8, 2005: "Preparation and photocopying of Plaintiff's exhibits for delivery to Defendant's counsel; letter to M. Adams regarding new trial date; letter to F. Pinson regarding new trial date; letter to P. Evans regarding new trial date." In consideration of the various tasks grouped together in this entry, the Court will deduct one hour, or $85.00, from Plaintiff's total award for the photocopying expenses incurred on this date.

"unreasonable duplication of efforts that was not warranted by the complexity level of this case." In particular, Defendant objects to Ms. Bjorkman's participation at trial, on the grounds that Ms. Caldwell and Ms. Rasmussen were experienced enough to handle the trial on their own. Defendant requests the deduction of all of Ms. Bjorkman's fees incurred at trial. Defendant also argues that the fees associated with conversations and meetings between Plaintiff's various attorneys are excessive and should be deducted.

Plaintiff's contention is that the hours expended were not excessive, redundant, or otherwise unnecessary and that "[a]ny duplication that might have occurred during the attorneys' conferences was unavoidable since conferences between attorneys to discuss strategy and prepare for trial are an essential part of effective litigation." Plaintiff also notes that Defendant was represented by two atorneys at trial.

One of the factors the Court must consider when determining the reasonableness of hours billed is "whether the lawyer . . . unnecessarily duplicat[ed] the work of co-counsel." Coulter v. State of Tennessee, 805 F.2d 146, 151 (6th Cir. 1986). The Sixth Circuit has recognized that district courts have the discretion to "take . . . duplication into account by making a simple across-the-board reduction by a certain percentage." Hudson v. Reno, 130 F.3d 1193, 1208 (6th Cir. 1997)(affirming lower court's

-16-

reduction of prevailing party's fees by 25% "to account for duplication of effort in trial, trial preparation, and the pre-trial conference"), rev'd on other grounds, Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843 (2001).

Based on its review of Plaintiff's billing records, and its own observation of the participation of Plaintiff's three attorneys at trial, the Court concludes that no duplication of effort was expended and that a reduction in the overall fee award would not be appropriate.  The Court finds that each of Plaintiff's attorneys contributed at trial in separate and meaningful ways.  While Ms. Bjorkman may not have brought as much experience to the trial effort as the other attorneys, the billing records reveal that she performed a substantial amount of the pretrial preparation.  The Court declines to second-guess the value of Ms. Bjorkman's contribution or the determination by Plaintiff's counsel that her presence at trial was necessary. Accordingly, the hours billed for Ms. Bjorkman's presence at trial will not be deducted from Plaintiff's overall fee award.

Defendant also requests that the Court reduce the Plaintiff's fee award for the unreasonable number of conversations and conferences between Ms. Caldwell and Ms. Rasmussen.  The Court does not find the amount of communication between these two attorneys, who performed the bulk of the legal work in the case and who do not work at the same firm, to be

-17-

unreasonable.  Accordingly, Plaintiff's award will not be reduced on this basis.

### 3.   Total Lodestar Amount

As set forth above, the amount of attorney's fees compensable under § 2000e-5(k) is determined by the "lodestar" method, in which fees are "calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." Blanchard v. Bergeron, 489 U.S. 87, 94 (1989) (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)).  Based on the foregoing analysis, the Court deducts the amount of $2,208.75 from Plaintiff's requested fee award of $118,591.50, for a total of $116,382.75.

### C.   Adjustment of the Lodestar

"The most critical factor in determining the reasonableness of a fee award is the degree of success obtained." Farrar v. Hobby, 506 U.S. 103, 111 (quoting Hensley, 461 U.S. at 436)). Defendant argues that the lodestar amount in this case should be adjusted to reflect Plaintiff's "very limited success." Defendant argues that while Plaintiff alleged and sought to prove emotional and physical damages, the jury only awarded $8,000.00 for medical expenses. According to Defendant, the amount of fees and expenses Plaintiff seeks is excessive in light of his limited success at trial.  Plaintiff counters that the Supreme Court has rejected the argument that attorney fee awards must always be

-18-

proportionate to the size of a damage award.  Moreover, Plaintiff argues, monetary damages are not the only measure of success.

There is a "strong presumption that the lodestar represents the reasonable fee." City of Burlington v. Dague, 505 U.S. 557, 562 (1992).  If, however, a plaintiff achieves only limited success, the lodestar calculation may reflect an excessive award, "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." Hensley, 461 U.S. at 436.  In this case, Plaintiff's success can only be described as "limited" and accordingly, the lodestar amount must be reduced.

At trial, Plaintiff prevailed on his sole claim of hostile work environment discrimination under Title VII, but the amount of damages the jury awarded was substantially lower than what Plaintiff sought to recover.  In Plaintiff's original complaint as well as in the Pretrial Order, Plaintiff claimed damages in the amount of $300,000 for the severe humiliation and emotional distress that he allegedly suffered.  Plaintiff sought no injunctive relief, only monetary compensation.  The jury returned a verdict in Plaintiff's favor and awarded $8,000 for medical expenses, but it awarded no damages for pain and suffering.  In light of this result, the Court concludes that the lodestar amount should be reduced by 25% to account for Plaintiff's limited success. See, e.g., Allen v. Allied Plant Maintenance Co., 881 F.2d 291, 299 (6th Cir. 1989)(affirming lower court's

reduction of lodestar amount by 35% to account for plaintiff's limited success where original complaint included ten defendants, five causes of action, and a request for punitive damages, but plaintiff ultimately recovered against only two defendants and one cause of action and was not awarded punitive damages); Marshal & Swift v. BS&A Software, 871 F. Supp. 952, 964-65 (W.D. Mich. 1994)(reducing overall fee award by one third to account for limited success where plaintiff recovered "only approximately one-tenth of the damages" requested). Accordingly, Plaintiff's fee award of $116,382.75 is reduced by 25%, for a total of $87,287.06.

**D.    Expenses**

Plaintiff requests a total of $11,985.24 in costs and expenses.  In his original petition, Plaintiff requested $8,736.06 for expenses.  In his supplemental motion, Plaintiff requested an additional $2,400 for witness expenses for Dr. Rebecca Caperton, who testified at trial, and $849.18 in expenses for photocopies, courier charges, and computer research incurred while preparing, briefing and supplementing Plaintiff's fee petition.

Defendant objects to Plaintiff's expenditures for meals on June 9, 2004, ($24.90) and May 2, 2005, ($36.76).  Defendant also objects to all of Ms. Caldwell's photocopying and miscellaneous

expenses,[6] which total $312.73.  According to Defendant, these costs are insufficiently documented.  The Court disagrees; the expenditures are described with sufficient particularity and are not unreasonable.  Accordingly, the Court will not deduct these expenses.

**IV.   Conclusion**

For all the reasons set forth above, the Court GRANTS Plaintiff's request for attorney's fees in the amount of $87,287.06 and expenses in the amount of $11,985.24, for a total of $99,272.30.

So ORDERED this _15_ day of December, 2005.

_____
JON P. McCALLA
UNITED STATES DISTRICT JUDGE

---

[6] For postage, faxes, online research, and telephone costs.

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 78 in case 2:03-CV-02562 was distributed by fax, mail, or direct printing on December 16, 2005 to the parties listed.

---

Robin H. Rasmussen
APPERSON CRUMP & MAXWELL, PLC
6000 Poplar Ave.
Ste. 400
Memphis, TN 38119--397

Harriett Miller Halmon
167 North Main, Suite 800
Memphis, TN 38103

Kathleen L. Caldwell
LAW OFFICE OF KATHLEEN L. CALDWELL
2080 Peabody Ave.
Memphis, TN 38104

Emily B Bjorkman
APPERSON CRUMP & MAXWELL PLC
6000 Poplar Ave
Ste. 400
Memphis, TN 38119

Honorable Jon McCalla
US DISTRICT COURT